IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No.:   24-CR-186-MLG |
| ) | |
| vs. ) | |
| ) | |
| **BILLIE JO GUSSLER,** ) | |
| ) | |
| Defendant. ) | |

**UNITED STATES' SENTENCING MEMORANDUM**

The United States respectfully submits this Sentencing Memorandum for this Court's consideration in advance of Defendant Billie Jo Gussler's sentencing hearing on September 4, 2025. Defendant pled guilty to a single-count indictment charging Theft in Indian Country, in violation of 18 U.S.C. §§ 1152 and 661, as well as an information charging seven counts of Bank Fraud, in violation of 18 U.S.C. § 1344, pursuant to a Rule 11(c)(1)(B) plea agreement. The United States now asks this court to impose a high-end guideline sentence of 46 months imprisonment followed by a three-year term of supervised release.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

The United States adopts the description of the offense conduct contained in the Presentence Report. *See* PSR ¶¶ 11-34. In short, Defendant and her wife, co-defendant Angelica Dominguez, engaged in a bank fraud scheme between January 2020 and August 2022 that involved stealing and fraudulently cashing checks that were intended for other people. PSR ¶¶ 18-34. This scheme resulted in a total intended loss of more than $40,000 – specifically, including $31,154.80 in actual loss incurred by Defendant and Dominguez acting together,

$11,496.81 in actual loss incurred by Defendant alone, and $7,981.42 in attempted loss.[1] PSR ¶¶ 31, 34. While this scheme was ongoing, on May 22, 2022, Defendant and Dominguez also broke into a Valero gas station in Tesuque Pueblo by throwing an object through the glass door to the convenience store. Once inside, they stole New Mexico lottery tickets and cigarettes. PSR ¶ 12. Defendant and Dominguez were ultimately identified as the perpetrators of the theft in part because Dominguez attempted to cash the stolen lottery tickets at a gas station in Tucumcari the following day. PSR ¶ 16. The total loss from this theft, including the damage to the gas station, was $2,494.27. PSR ¶ 17.

Defendant and Dominguez were indicted on the Theft in Indian Country charge on February 13, 2024, and were arrested on that charge on June 18, 2024. Following a detention hearing on July 5, 2024, Defendant and Dominguez were released to the third-party custody of Hoffman Hall sober living facility on GPS monitoring. Less than a week later, on July 11, 2024, Defendant and Dominguez left Hoffman Hall, cut their GPS monitors and placed them in a nearby dumpster, and absconded. The two were not apprehended until nearly one month later, on August 9, 2024. Defendant and Dominguez were detained following their arrests. Docs. 44-50. On December 16, 2024, Defendant pled guilty to the indictment as well as a separate information charging seven counts of Bank Fraud.

## II.   SENTENCING GUIDELINES COMPUTATION

On April 10, 2025, the United States submitted a single objection to the draft PSR asserting that the Court should apply a two-level adjustment for obstruction of justice pursuant to

---

[1] Loss under U.S.S.G. § 2B1.1(b) includes the greater of actual loss or intended loss, with intended loss defined to include "the pecuniary harm that the defendant purposefully sought to inflict." U.S.S.G. § 2B1.1(b), Note (C)(ii). Here, every fraudulent check that Defendant intended to cash – whether successful or not – was harm that she purposefully sought to inflict; thus, loss for § 2B1.1(b) includes the sum of actual loss and attempted loss. *See United States v. Foreman*, No. 22-1255, 2024 WL 548644, at *1 (10th Cir. Feb. 12, 2024) (unpublished) (affirming district court calculation of loss to include actual loss plus attempted loss); *United States v. Sesay*, 937 F.3d 1146, 1153 (8th Cir. 2019) ("Intended loss . . . includes actual losses suffered.")

U.S.S.G. § 3C1.1.  Doc. 72.  On May 22, 2025, Probation filed a revised PSR that includes the obstruction enhancement.  Doc. 85-1.  Accordingly, the United States has no remaining objections to the PSR.

On April 11, 2025, Defendant filed objections to the PSR.  Doc. 73.  The United States responded on April 18, 2025.  Doc. 75.  In its response, the United States provided its position on the objections and explained its view that the guideline range should remain unchanged, subject to the addition of the obstruction enhancement.  *Id.*  Accordingly, the United States submits that Defendant's guideline computation is as follows:

| ACTION | NUMBER | REFERENCE OR COMMENT |
|---|---|---|
| Base Offense Level | 7 | USSG § 2B1.1(a)(1) |
| Adjustment – Loss Exceeds $40,000 | +6 | USSG § 2B1.1(b)(1)(D) |
| Adjustment – 10+ Victims | +2 | USSG § 2B1.1(b)(2)(A)(i) |
| Adjustment – Obstruction | +2 | USSG § 3C1.1 |
| Adjustment – Acceptance | -3 | USSG § 3E1.1 |
| Total Offense Level | 14 | |
| Estimated Criminal History Category | VI | |
| Advisory Sentencing Range (months) | 37-46 | |

**III.   ARGUMENT**

The United States Sentencing Guidelines are advisory.  *See United States v. Booker*, 543 U.S. 220, 233 (2005).  A district court cannot presume that a guideline sentence is reasonable and must conduct an analysis using both the guidelines and the sentencing statutes.  *Rita v. United States*, 551 U.S. 338, 347-48 (2007).

The statutory sentencing factors a court must consider include: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed — (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal

conduct; [and] (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]" 18 U.S.C. § 3553(a)(1), (2)(A)-(D).  A sentencing court must also consider the sentencing range established by the guidelines for the applicable offense, as well as the need to avoid unwarranted sentencing disparities among similarly situated defendants.  18 U.S.C. § 3553(a)(4)(A), (6).  The United States submits that these factors support a high-end guideline sentence of 46 months of imprisonment.

### A. The Nature and Circumstances of the Offense and Defendant's History and Characteristics Warrant a High-End Guideline Sentence.

The nature and circumstances of the offense and the history and characteristics of the defendant include the conduct surrounding the offense for which the defendant was convicted, as well as the defendant's character and background.  *See United States v. Gantt*, 679 F.3d 1240, 1250 (10th Cir. 2012); *United States v. Sanders*, 2024 WL 1434088, at *6 n.4 (10th Cir. Apr. 3, 2024) (unpublished) (quoting 18 U.S.C. § 3661).

Defendant's offense involved a multi-year scheme in which she and her wife stole checks from other people's mail for the purpose of fraudulently cashing the checks by forging signatures or otherwise altering them.  While the bank fraud scheme was ongoing, Defendant and Dominguez broke into a gas station owned by the Tesuque Pueblo and stole lottery tickets and cigarettes.  The very next day, Dominguez entered a different gas station and attempted to cash in the tickets that she and Defendant had stolen.  This behavior reflects a brazen and long-running pattern of behavior in which Defendant stole money she was not owed by taking from members of her own community.  And once apprehended for these offenses, Defendant immediately cut her GPS monitory in an attempt to evade prosecution.  The predatory nature of

Defendant's scheme, as well as her efforts to obstruct justice in this case, merit a sentence at the high end of the guideline range.

Defendant's history and characteristics only reinforce this conclusion. Defendant has a criminal history score of 22. PSR ¶ 69. This score is 9 points above the cutoff necessary to place her in criminal history category VI, the highest criminal history category under the sentencing guidelines. *See* United States Sentencing Table, *available at* https://www.ussc.gov/guidelines/2024-guidelines-manual/annotated-2024-chapter-5 (criminal history category VI applies to offenders with 13 or more criminal history points). Excluding the offenses committed when she was a juvenile, Defendant's criminal conduct dates back over two decades. *See* PSR ¶¶ 57-87. Notably, much of Defendant's past conduct is remarkably similar to the conduct that has resulted in the federal charges for which she is now facing sentencing. For example, in separate incidents in 2004 alone, Defendant was convicted of using the personal information of another to commit larceny, PSR ¶ 58, possessing a stolen vehicle that was wrongfully taken from another, PSR ¶ 59, and possessing and attempting to use the credit card of another, PSR ¶ 60. In addition to these convictions, Defendant's prolific criminal history includes multiple convictions for possession of a controlled substance, PSR ¶¶ 61, 62, 67, possession of a stolen vehicle, PSR ¶ 63, burglary, PSR ¶ 64, and resisting arrest, PSR ¶ 65.

These are just the offenses for which Defendant has been convicted. Defendant has also been charged with numerous other offenses, including being a fugitive from justice and multiple counts of forgery, burglary, and possession of a firearm by a prohibited person. PSR ¶¶ 75-87. Defendant's decades-long history of similar criminal conduct further merits a high-end guideline sentence of 46 months imprisonment.

### A. A High-End Guideline Sentence is Necessary to Serve Federal Sentencing Goals.

A high-end guideline sentence is also necessary to serve the federal sentencing goals of promoting respect for the law, affording adequate deterrence to criminal conduct, and protecting the public from further crimes of the defendant.

Defendant's criminal history goes well beyond the 11 offenses for which she has previously been convicted.  However, even if the Court puts aside Defendant's numerous arrests and looks only at the 11 times Defendant has been sentenced for a criminal offense in the past, it is clear that Defendant has had 11 opportunities to change her behavior in response to a criminal conviction.  Each time, she has instead chosen to return to the same pattern of behavior she has been engaging in for over 20 years.  When Defendant has served prison time in the past, she repeatedly has been dishonorably discharged from parole once released.  *See, e.g.*, PSR ¶¶ 57, 61, 64.  In this case, she attempted to evade prosecution by cutting her GPS monitor and absconding mere days after a United States Magistrate Judge ordered her to reside in the third-party custody of a sober living facility.

A clear pattern emerges from this history: Defendant has spent the past two decades violating the law and disobeying court orders.  Defendant's prior conduct is the best predictor of her future behavior.  The instant offenses highlight the fact that not only does Defendant lack respect for the law and the judicial system, but also that her previous sentences have not succeeded in deterring her from engaging in criminal conduct and have not protected the public from Defendant's prolific criminal behavior.  Based on the nature and circumstances of the offense, Defendant's history and characteristics, and in view of the goals of federal sentencing, a high-end guideline sentence of 46 months is necessary to promote respect for the law, to deter

6

Defendant from continuing to engage in this pattern of criminal behavior, and to protect the public from future crimes by Defendant.

### A. A High-End Guideline Sentence Would Avoid Unwarranted Sentencing Disparities Between Defendants Who Have Committed Similar Acts.

Finally, a sentence at the high-end of Defendant's guideline range would prevent unwarranted sentencing disparities between similarly situated defendants. Based on the JSIN data reflected in the PSR, 100% of offenders in Defendant's position received a sentence of incarceration. PSR ¶ 140. The average sentence for these offenders was 34 months and the median sentence was 37 months. Defendant, however, has a criminal history score of 22—nearly double the 13-point cutoff necessary to qualify for the highest criminal history category of VI. A high-end guideline sentence is therefore necessary to reflect Defendant's particularly egregious criminal history, even as compared to other offenders who qualify for the highest criminal history category under the guidelines.

### CONCLUSION

Based on the foregoing, the United States respectfully requests that the Court sentence Defendant to a high-end guideline sentence of 46 months imprisonment followed by three years of supervised release, as well as the restitution outlined in the PSR.

        Respectfully submitted,

        RYAN ELLISON
        United States Attorney

        */s/    Electronically filed*
        MEG TOMLINSON
        MARIA STITELER
        Assistant United States Attorneys
        201 3rd St. NW, Suite 900
        Albuquerque, New Mexico 87102

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that I filed the foregoing document electronically through the CM/ECF system. Pursuant to the CM/ECF Administrative Procedures Manual, §§ 1(a), 7(b)(2), such filing is the equivalent of service on parties of record.

                                            */s/ Electronically filed*
                                            **MARIA ELENA STITELER**
                                            Assistant United States Attorney
                                            201 3rd St. NW
                                            Albuquerque, NM 87102